# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUSTIN CABOT,** | : |
| | : |
| **Plaintiff** | CIVIL ACTION NO. 3:17-0710 |
| | : |
| v | : |
| | : (JUDGE MANNION) |
| **FEDERAL BUREAU OF PRISONS,** *et al.,* | : |
| | : |
| **Defendants** | : |

## MEMORANDUM

## I. Background

Plaintiff, Justin Cabot, an inmate formerly confined in the United States Penitentiary, Lewisburg ("USP-Lewisburg"), Pennsylvania[1], filed the above captioned action pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). (Doc. 1, complaint). Plaintiff names as Defendants, the Federal Bureau of Prisons, USP-Lewisburg Medical, Dr. Edinger, and "an unknown 3rd shift officer on B-Block." Id.

Plaintiff alleges that in August, 2015, he "came out of a concussion induced lapse of time and USP-Lewisburg medical team were evaluating [him] for 13 wounds in which they claimed were stab wounds", nine to the stomach and pelvis and four to Plaintiff's head. Id. Plaintiff claims that he "never

---

[1] Plaintiff is currently housed in the McCreary United States Penitentiary, Pine Knot, Kentucky.

received an MRI or any type of measurement to determine a) concussion and b) if internal damage occurred." Id. Plaintiff alleges that he as simply "stapled up". Id.

A day later, in his cell, Plaintiff "notified 3rd shift officer 'I'm dying', and he said 'go to sleep'." Id. Plaintiff "continued to vomit blood and poison, while experiencing sharp stomach pain, dizziness, time disorientation and could not eat or drink." Id.

The following day, Plaintiff states that a "nurse attempted to give [him] medication, and [he] said 'I'm dying'," to which she replied "well then you don't need your medication and left." Id. Plaintiff alleges that "some time later, while still vomiting bile, mucus, stomach acid, blood and poison", he was "brought to hospital", where they told him that "you are almost dead, we must emergency operate because you have four holes in your intestine and poison has flooded your system." Id. Plaintiff had to have a portion of his intestine cut off and remained in the hospital for ten days, on pain medication. Id.

Plaintiff claims that he was "discharged back to Lewisburg where "Dr. Edinger immediately cut off pain medication (he changed it) and abruptly stopped it. Id. Plaintiff "remained locked in with another individual while suffering extreme pain and having staples in [his] gut (zipper) with 2½ feet of gauze stuffed in [his] belly." Id.

Plaintiff states that he "contacted Lewisburg Prison Project and was told to be careful of retaliation from administration and staff at the S.M.U." Id. He claims that he "filed a tort claim under guidance of Prison Project" and "was told grievance procedure was not needed and retaliation from officers would occur if [he] did file it." Id.

Thus, Plaintiff filed the instant action in which he claims that his "8th Amendment right has been violated by the experience of wanton infliction of pain" and his "medical needs were/are serious and there was deliberate indifference when [he] told officer 'I'm dying' and was told 'go to sleep'." Id. He claims that "doctor should know concussion and stab wounds to stomach area need some type of testing to determine the extent of the internal damage" and "doctor blatantly ignored this." Id. For relief, Plaintiff seeks "financial security and medical care for issues stemming from this occurrence," as well as compensatory and punitive damages. Id.

Presently before the Court is Defendants' motion to dismiss and/or for summary judgment. (Doc. 26). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendants' motion to dismiss and for summary judgment will be granted.

3

## II. Standards of Review

### A. Bivens Standard

Plaintiff's claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

**B. Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180,

184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed App'x. 183 (3d Cir. 2008).

## C. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v.

Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition.

Fed.R.Civ.P. 56(e).

### III. **Statement of Facts**[2]

On September 7, 2011, Plaintiff was sentenced in the United States District Court for the District of New Jersey, to a 132 month term of incarceration for Bank Robbery by Force of Violence, in violation of 18 U.S.C. §2113(a). (Doc. 27-1 at 7, Inmate Data). His anticipated release date is currently December 31, 2021. Id.

Since his designation to BOP custody, Cabot has filed nine (9) administrative remedies. (Doc. 27-1 at 10-15, Administrative Remedy Generalized Retrieval). Of the nine, only one addresses the August, 2015

---

[2]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 27) will be deemed admitted.

assault and subsequent medical treatment. Id. On November 5, 2018, Cabot filed Administrative Remedy No. 841436-F1, at the institution level, stating that he was being denied treatment for pain from his stab wounds. Id. His remedy was rejected for failing to attempt information resolution first. Id. No other remedy was filed regarding the August, 2015 assault or subsequent medical treatment.

**IV.     Discussion**

Defendants contend that Cabot's complaint should be dismissed for his failure to exhaust available administrative. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 548 at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. Id. As such, it must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Bureau of Prisons ("BOP").

11

"The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. This procedure applies to all inmates confined in Bureau of Prisons institutions. . . ." 28 C.F.R. §542.10. Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter. 28 C.F.R. §542.13(a). If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden. 28 C.F.R. §542.14(b). The warden is then to respond to the inmate's complaint within twenty (20) days. Id. at §542.18. If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director. 28 C.F.R. §542.15. If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the Federal Bureau of Prisons, which office is the final administrative appeal in the Bureau of Prisons. Id.

If a remedy is rejected at any level, it is returned to the inmate with a written notice explaining the reason for rejection. Copies of rejected remedies are not maintained by the BOP. 28 C.F.R. §542.17. Accordingly, an inmate has not exhausted his administrative remedies until the complaint has been

denied at all levels of the process prior to filing suit.

As a safeguard for inmates who reasonably believe their safety would be placed in danger if the request became known at the institution, the regulations permit an inmate to submit a "sensitive" request directly to the appropriate Regional Director. 28 C.F.R. §542.14(d)(1). The request must include appropriate justification for not first filing at the institution. Id.

The record reveals, and Plaintiff concedes, that he did not exhaust administrative remedies. Specifically, Plaintiff states that "as for the remedy system, I submitted numerous filings, and I believe they were thrown away" and "then the Lewisburg prison Project came to see me after they contacted me" and "I was told about cases of retaliation on prisoners who 'file' and was directed by paralegal Dave Sprout to file tort within a time frame and that it covers this process." (Doc. 29 at ). Plaintiff's conclusory allegations, however, fail for several reasons.

First, the record before the Court reveals that Plaintiff did, in fact, file an administrative remedy concerning his medical care following the August 2015 assault. To the extent that the remedy was rejected for Plaintiff's failure to first file an informal resolution, such rejection could have been remedied and did not render the process unavailable. Further, Plaintiff's conclusory allegations

do not excuse the existence of 28 C.F.R. §542.14(d)(1), which provides procedures for exhausting a claim when the inmate fears the filing of a grievance will jeopardize his well-being. Specifically, once Plaintiff believed that his "numerous filing" were being "thrown away" and that he feared retaliation, Plaintiff had the option of filing a "sensitive" remedy directly to the Regional Director. The Third Circuit has recognized that in such instances, a plaintiff must exhaust by filing his complaint directly with the Regional Director under 28 C.F.R. §542.14(d)(1), or otherwise allege that Defendants prevented him from pursuing this alternative procedure for exhaustion. See Davis v. Saylor, No. 14-2693, 2015 WL 6735904, at *3 (3d Cir. No. 4, 2015). In Davis, the plaintiff argued that exhaustion was not required because he brought claims for retaliation and feared reprisals from prison staff for filing a grievance. Id. at *2. The Third Circuit held otherwise:

> Davis concedes that the BOP has an established Administrative Remedy Program, but argues that it was effectively unavailable to him because he had been threatened by Officer Brininger with further retaliation if he 'file[d] anything.' While we have recognized that a prisoner's failure to exhaust may be excused when the actions of prison staff render the administrative remedies 'unavailable,' we cannot say that there were no remedies available to Davis here. Even assuming that Officer Brininger's threats deterred Davis from lodging an informal complaint with prison staff under 28 C.F.R. §542.13, or from filing a formal request with the correctional counselor under 28 C.F.R. §542.14(c), Davis could have bypassed the institution and filed a

14

complaint directly with the Regional Director under 28 C.F.R. §542.14(d)(1), if he believed that his safety or well-being was in danger. Given that Davis did not provide any argument or evidence in the District Court suggesting that this alternative procedure was unavailable to him, the District Court properly entered summary judgment against him.

Similarly, in the instant action, Plaintiff, fails to provide any argument or evidence that the alternative procedure under 28 C.F.R. §542.14(d)(1), was not available to him.

Finally, to the extent that Plaintiff attempts to argue that the filing of an administrative tort claim satisfies the exhaustion of his constitutional claims, such claim is without merit. Caselaw recognizes that there is a fundamental distinction between the type of administrative exhaustion of inmate grievances through a prison grievance system that is required by the Prison Litigation Reform Act of 1996 (the "PLRA") 42 U.S.C. §997e(a), before bringing a Bivens constitutional tort claim against individuals, and the separate administrative exhaustion requirement mandated by the FTCA before inmate may pursue tort claims against the United States. West v. Shultz, 1:CV-12-1004, 2014 WL 1668093, *6-9 (M.D. Pa. Apr. 24, 2014). Given the existence of these two separate administrative processes, and the very different purposes served by these two parallel processes, an inmate may not rely upon the submission of an FTCA claim to satisfy his separate and

15

independent exhaustion obligation under the PLRA. As this Court has observed:

> Because of the mandatory exhaustion procedures under both the PLRA and the FTCA, and the separate purposes of these procedures with respect to the different claims, courts have consistently held that fulfillment of one exhaustion requirement does not satisfy the other. See Lambert v. United States, 198 F. App'x 835, 840 (11th Cir. 2006); Brockett v. Parks, 48 F. App'x 539, 541 (6th Cir. 2002). This Court has also made clear that the administrative exhaustion requirements under the PLRA and the FTCA are separate and distinct, and that each must be independently followed in order for an inmate to maintain Bivens and negligence claims in the same action. See Williams v. Bledsoe, Civ. No. 3:CV-12-1235, 2013 WL 5522848, *19-20 (M.D. Pa. Oct. 3, 2013) (Caputo, J.); Lopez v. Brady, Civ. No. 4:CV-07-1126, 2008 WL 4415585, at *10 (M.D. Pa. Sept. 25, 2008) (McClure, J.).

West v. Shultz, 1:CV-12-1004, 2014 WL 1668093, *9 (M.D. Pa. Apr. 24, 2014). As such, the Prison Litigation Reform Act requires that an inmate fully exhaust his administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with grievance procedures and timelines. Judged against these benchmarks, it is evident that Plaintiff failed to follow the procedural requirements of the BOP. Failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372 F.3d 218, 222-26 (3d Cir.

2004). Plaintiff's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In Spruill, supra, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, the record clearly discloses that Plaintiff failed to exhaust his administrative remedies with respect to his assault and medical claims. Thus, Plaintiff has sustained a procedural default with respect to these claims.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Cabot offers no evidence to justify his failure to comply with BOP requirements. Consequently, he is now foreclosed from litigating his

remaining claims in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to

enter judgment in favor of Defendants.

**V.     Conclusion**

Defendants are entitled to summary judgment for Plaintiff's failure to properly exhaust available administrative remedies prior to filing the instant action. An appropriate order shall issue.


                                         s/ *Malachy E. Mannion*
                                         **MALACHY E. MANNION**
                                         **United States District Judge**

**DATED: September 7, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0710-01.wpd